Good morning. It pleases the Court. My name is Jeffrey Martins, and I am representing the petitioner in this manner, Mr. Samuel Lamichhane. I'd like to reserve two minutes of my time for introspection. In the government's brief, there are seven citations to the Administrative Record regarding conflicting dates that Mr. Lamichhane provided regarding his date of entry. The first two of these is the judge and the Board's decisions themselves, which state he gave conflicting dates of entry. The next three are Mr. Lamichhane's testimony and his cooperative evidence, a Customs Affidavit, all of which state April 1, 2010, as his date of entry. The sixth one, which I think is the most telling, is the I-261, which was provided by the Immigration Customs Enforcement to the Court. It's the Immigration Service's own position regarding when he entered the United States. It also states April 1, 2010. Counsel, you have very limited time, and I'd like you, if you wouldn't mind, to move to the questions that were sent to counsel prior to the argument, and that is to deal with the Court's analysis of the withholding claim and the question whether even if their analysis was incorrect, there would be a futility of returning the case to them because of the comments that they made about the lack of harm to your client and those other incidents. So if you would turn to those issues, I'd appreciate it. Sure, Your Honor. I don't believe that it would be an ideal or useless formality to remand this case because of the use of the incorrect withholding standards under Ferran Haas-Romero v. Lynch. Three out of the four incidents were found not to have a nexus using the asylum standards, the one central reason. Right, but I guess the question is that in the BIA's decision, for example, on the April 2005 incident, they said that the Maoists had asked Petitioner to join them, but, quote, they did not harm him when he refused, and that's in AR 37. And similarly, they seem to have stated with respect to those omitted incidents that he either was not harmed personally or was not targeted personally. So what is your best case that the outcome of the withholding claim could be different? Well, if the nexus is provided on all of those incidents, which I think is more likely using the lower standard of reason rather than one central reason, then there increases the possibility of a finding of past persecution. But how is that so if there's a nexus but no harm? I guess that's my question. Well, because I think the error that the Board made in both the asylum analysis and the withholding analysis is by considering each one of those incidents individually instead of cumulatively. And also, the Board did not consider the Maoist Circumstantial Dean that threats alone can't constitute past persecution as long as the party that's making the threat has the will and the ability to carry out the threats. And I think that the record shows that the Maoists do have the ability to carry out those threats, but it's really taking all of those incidents cumulatively in the context that they occurred that makes it more likely that they will rise to the level of past persecution. I think they were dismissed unreasonably by the Board because of the lack of nexus finding. But I also do believe that there's a very strong case for Mr. Lamachine to make that his application was unreasonably pre-intermitted because there's not- Why do we have jurisdiction? Because there are facts in dispute. Ordinarily, we would like jurisdiction over the finding. That's correct, Your Honor. I think in this case, what the government is arguing essentially is that because the judge and the Board said that there were facts in dispute, that makes facts in dispute. I think when the court looks at the administrative record, they'll see that the testimony and the evidence is very consistent that his date of entry was April 1st, 2010, which would make the application timepiece really effectually- So where do you think that March 28th note came from then? I think that's an error. I mean, it's all speculation because there was no testimony or no evidence presented regarding that notation. I think most likely it was a matter of just misinterpreting what Mr. Lamachine was explaining at the Asylum Office, that he entered three days earlier and arrived in Houston on April 4th. And so then when the date of entry was April 1st, whoever the Asylum Officer was just minus three days and wrote down March 28th. I mean, I think it's the most likely explanation for it, but I think that evidence was unfairly relied upon because it was never really made officially part of the record. There was no testimony about the date either from Mr. Lamachine, who was never questioned about it, and his Asylum Officer didn't testify either. Did he have the form that had that note on it at some point during the proceedings? I believe so. I mean, it was certainly referenced in the judge's decision. I mean, normally the annotations of the Asylum Officer are just provided to the court and the Office of Chief Counsel are not given to the respondent, but it should have been the normal procedure would be for it to have been reviewed with them at the Asylum Office interview. I don't know if that took place in this case or not because there never was any testimony about it. Can I go back to something related to Judge Graber's earlier question? So in the first incident when the Maoists, as I understand, tried to seize him, were there threats made in that incident too? So it was like an attempt at kidnapping and threats, or could you describe that first incident? I believe that testimony and the evidence in the record just said that they came to his home and said that he has to come join them, and then he said that they had threatened him when they left. They didn't say exactly what the specific details of the threat were. I thought he had to resist and make noise so that people would gather. Isn't that the first incident? That's true, yes. His neighbors came to rescue him, and then when they left they made threats. So, I mean, were they grabbing him? What was he making noise about? Presumably. I mean, I don't know if that's particularly in the record or not. He certainly did make noise enough so that it would attract the attention of the neighbors to come. There were other points in his testimony where he would say that the Maoists were interested in him because of his NSU activity with the Nepali Students Union or because of his membership with the Congress, and those areas also weren't really explored in detail, and I think that's the kind of evidence that could lead the board to find a nexus to a protected ground under a mixed mode of analysis because there was more than one mode of maybe partly recruitment, but also they knew that he was involved in these activities they didn't like. And did he ever, do we know whether he ever told them that he wasn't joining them because of his political beliefs that he disagreed with them? That's a good question, and I don't believe that is part of the record, at least not to my memory. He's saying, though, that if the government had applied a different standard, that they would have viewed the facts that they found not to be persuasive, they would see them in a different light. That's right, because I think three out of the four incidents were dismissed because there was no nexus, and there was no nexus under the asylum standards under the Real Idea Act of one central reason. So if it's a reason, then it changes the analysis entirely. But the difference would have to be that it would have to be his political beliefs that were a reason. So in his head, it seems like he was not joining them because of his political beliefs. Is that enough, or did the Maoists need to know that he had that in his head, that those were his beliefs? Well, it has to be the Maoists' motivation for the persecution. And so is it your position that they did know in the first incidents that he wasn't joining them because of, at least that's one reason that they, okay, let's try again. Did they know that he was not joining them because he had these political beliefs? Not entirely. I mean, he certainly believed that they knew about it. It was not explored in his testimony. I think his counsel at the immigration court had tried to ask him some questions about that and what made him come to that conclusion, and he was cut off by the judge, saying there was no foundation for that question. It wasn't fully developed. But he did at several points state that they did have this other motivation, that they knew he was active in this. Particularly in reference to the last incident where they did find a nexus. At that point, the Maoists said, we've been watching you. We know, I think it was just a strong indication that, you know, the past incidents were, you know, offenses, according to the Maoists, that they had been aware of, you know, in terms of his political activity and that sort of thing. You've used a lot of your time, but you can have a minute for about a week, and then time comes, so to speak. You took a lot of your time, so we're going to hear from the camera. Good morning. Jane Schaffner for the respondent. I understand the court is interested in the Barajas issue specifically, but if I may just take a quick moment to address the one-year bar for purposes of asylum. In particular, Judge Friedland, your question about the March 28th notation on his asylum application, that notation appears on page 309 of the record and at page 318 of the record. There's an indication that says Mr. Lama Jane made the handwritten corrections number one through six, that those corrections were made by me or at my request, and that's at page 318 of the record. And Mr. Lama Jane did have an opportunity to review his asylum application before the immigration judge signed the application, again, in the presence of the immigration judge. So it's clear from the record that those notations were made either by him or at his request during his asylum interview. And also it's worth noting that when he entered pleadings to the charges of removability, and this is at page 119 of the record, through counsel, his counsel at the time said he wasn't sure when he arrived, he wasn't sure of his date of entry. He thought it was on or about April 1st. Later, he testified that he was certain that it was April 1st, but there were certainly inconsistencies in the dates that he provided because there's a factual dispute. We would argue that the court lacks jurisdiction over his asylum claim. Turning to the withholding issue, it doesn't really matter in this case whether the board applied one central reason standard or a reason. They determined that the first three incidents were not on account of Mr. Lama Jane's political opinion. But they were applying a different standard. So they may have said that thinking that the on account needed to be one central reason, when now we've clarified that that's not the standard. So isn't it possible they could have written that same thing under one standard, but under another standard would say, okay, well, it was part of the reason? I don't think they would. I think a remand would be a futile exercise because it was neither one central reason or a reason. In the record, with respect to the first incident, the first recruitment incident, Mr. Lama Jane said that the Maoists were coming to every home, that they were looking for one male from each household, that they weren't interested in him because he was at a time of leisure during a break from school. They made no reference to any activities he may have participated in on behalf of the Nepali Commerce Party or the Nepali Student Union. It just simply wasn't anything they mentioned. Their motives appeared to be driven solely by their recruitment needs in that first instance. So what do we make of the statement in the fourth incident with the posters that they had been watching him, and it seems like they're admitting to some kind of pattern of watching him. So what do you make of that? Right. The immigration judge found that to be implausible, be that as it may. But there was no adverse credibility determination? That's correct. Ultimately, the agency accepted that he did establish an access to the harm he experienced during that final incident with the Maoists, but that incident and all the other incidents resulted in no harm rising to the level of prosecution. Well, there's also, as I recall, there was no time placed on the we've been marching, even at least the first incident was from three years before the final incident. That's correct. The first recruitment incident occurred in March of 2005. The next incident was a letter that he received from the Maoists simply asking him to report. That happened in June of 2007, and this fourth incident occurred in April of 2008. So it's not clear what time period they were watching him. It's entirely possible that he was hanging posters during a particular campaign season. We don't know whether they were watching him during that campaign, whether they'd been watching him for years. The record simply isn't clear, and it's Mr. Lamajean's burden in this case to show not only that the record supports the conclusion that he advances, but the record actually compels the conclusion that he advances. That isn't really applicable to the question, I think, that Judge Freeland is pursuing, because what we have to be convinced of, I think, is that had the agency applied the construct that we have later imposed, we are certain that they would have come to the same conclusion about lack of nexus, which is a little bit of a different problem than the usual evidentiary standard. Right. Even assuming without conceding there was some problem with the agency's nexus determination, the finding in the board's decision that none of the incidents that he described were at the level of past persecution, and their finding that in the absence of past persecution, he failed to establish that internal relocation was unreasonable. But they looked at the incidents separately in terms of past persecution. So isn't it possible that the fourth incident did have a nexus? If you take the knife at the throat and the things that happened in the fourth incident, and you do think that under the right standard there was some nexus in the first three, then you get a bunch of threats out of the first three, and potentially putting the knife at the throat and the harm in the fourth incident, combined with the threats and other attempted kidnapping or whatever it was in the first three, that might be a different analysis, couldn't it be? Well, he has not identified any evidence that nexus was a reason, let alone one central reason, for the events in the first three incidents. Again, the first incident, they made no mention of his political opinion. They were simply looking for men from each household and wanted him during his time in jail. So they came to his house, it seems, looking for just men from every household. But if he then doesn't join them because his political beliefs don't agree with their political beliefs, and then they end up in some scuffle where they attempt to kidnap him and he's yelling, or it's a little bit unclear what happened in that incident, but how do we know the agency wouldn't say that that was partly because of his political beliefs, at least as it played out? Because there is no testimony. The testimony, and he hasn't identified, there was no testimony, and he can't identify any testimony that would show that his political opinion was any reason for the scuffle. Because the CIA has already noted that no one may, under the testimony, that no one made mention of his political beliefs. That's correct. In the first three cases. In the first three cases. And it's worth noting, by the way, that the third incident didn't involve Mr. Lamajain at all, actually. It was his father who was kidnapped, and his father was, the testimony suggests that the father was kidnapped because of his political beliefs, but that had nothing to do with the son's political, Mr. Lamajain's opinion. So really we're only dealing with three incidents relating to Mr. Lamajain himself. A recruitment letter, which made no reference to any political activities or political beliefs. A recruitment effort where there was no reference made to his political beliefs. We don't know what was said during the scuffle. There simply is no testimony regarding what, if anything, was said. So the agency is unlikely to arrive at a different conclusion in this case because not only was it not one single reason, it wasn't a reason at all, his political opinion. And they did accept that the fourth incident was on account of his political opinion. And so he did establish nexus, at least with respect to one of the incidents. But they determined in that incident, as well as the others, that he simply failed to establish past harm rising to the level of persecution, and he failed to establish that internal relocation was unreasonable. He lived with his uncle in another part of Nepal for over a year. He said at one point that he was bored staying home all day. But at, I believe, 2.31 in the record, he said he went out in the evenings with his family. So it was not unreasonable for the board to conclude that under those circumstances that internal relocation was possible for him. If there are no other questions, we would ask the court to dismiss the petition for review in part and deny the petition for review in remaining part. Thank you. I don't think we have more questions. Mr. Bartlett. If we could just make a couple quick comments here, and I'd appreciate it. The determination of past persecution is an important one in this case because it really does fundamentally change the analysis that the board provided with regard to the withholding. But it's also, I don't want to get too stuck on that because there is also the possibility of future harm. He can't establish that he has a well-founded fear of future or that it's still more likely than not that he could be subject to persecution without finding past persecution. I think when the court considers the totality of the experiences, he did suffer past persecution. But we're not going to be able to consider the totality unless you can show that part of the nexus, that there was a nexus at least in part from the first incidents. And that's what seems to be the point of the petition. So do you have anything more to say about whether in the earlier incidents the Maoists had information about his political beliefs or were it even in part coming after him because of his political beliefs? The only real indication about that is when they mentioned to him that they had been watching him. And I think that is an indication that they were aware of his political opinion and his activities. I think they passed his record after the first two incidents that they started watching him. We don't know when they were watching him. That's true, Your Honor. Yes. And one last comment about the internal relocation. When he attempted to do that, he continued to receive threats. I think that undermines the determination that internal relocation was a viable option for him. So, Mr. Lamaggio, I would request the court to remand this case for further proceedings. Thank you, counsel. Thank you very much. The case just argued is submitted, and we appreciate the arguments from both counsel.
judges: Graber, Friedland, Fogel